STEVEN G. KALAR
Federal Public Defender
Northern District of California
SOPHIA WHITING
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:    (415) 436-7706
Email:         Sophia_Whiting@fd.org


Counsel for Defendant Ponce-Briceno

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | **Case No.:** CR 19–628 CRB |
|---|---|
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | |
| WILMER PONCE-BRICENO, | |
| Defendant. | |

## INTRODUCTION

Wilmer Ponce-Briceno promptly accepted responsibility for his involvement in low-level drug dealing by entering a plea agreement with the government. Mr. Ponce-Briceno has been in custody for 2.5 months at Santa Rita Jail during the COVID-19 pandemic. He expects, in fact hopes, to be deported once his sentence is complete so he can be reunited with his family and can provide for his young son. Mr. Ponce-Briceno's advisory Guideline range is 8 to 14 months. A sentence of five months, jointly recommended by the parties pursuant to the plea agreement, is sufficient in light of Mr. Ponce-Briceno's background, the nature of the offense, the difficulty of being in custody during the pandemic, and his inevitable deportation to Honduras.

//

DEFENDANT'S SENTENCING MEMORANDUM
*PONCE-BRICENO*

**BACKGROUND**

Wilmer Ponce-Briceno was born on April 8, 1993, in Tegucigalpa, Francisco Morazán, Honduras. He grew up in a farming village. His family of six lived in a two-bedroom home. He had to leave school after fifth grade to work in the fields, because his family did not have enough to eat. He worked in the rice fields from the time he was just 12 or 13 years old. When he was 17, he made the arduous journey to the United States in search of employment to support his family.

Since first arriving to the United States, Mr. Ponce-Briceno has worked incredibly hard. He has had jobs in landscaping, painting, construction, and restaurants. In 2019, he worked full time in commercial painting and then worked at Edgewater Restaurant in New York in food preparation. As summer tourism came to an end and the weather turned cold in New York, he lost his restaurant job. He came to San Francisco in search of employment. Despite applying to multiple restaurants and trying to make it as a day laborer, he was not able to secure a job. In October 2019, he was twice arrested by San Francisco police in possession of small amounts of heroin and cocaine base for sale.

Mr. Ponce-Briceno happened to be arrested after the government began their Federal Initiative for the Tenderloin (FIT) and was therefore indicted federally. He was arrested on the federal charges on September 16, 2020. Since then, he has been in custody at Santa Rita Jail, while all programming has been suspended in light of the COVID-19 pandemic. During his time in custody, he fortunately has maintained regular contact with his son, girlfriend, and mother in Honduras. He has asked for photographs of his son and girlfriend to be sent to him at the jail, which are attached. *See* Declaration of Sophia Whiting in Support of Sentencing Memorandum (Whiting Decl.), Exhibit B. He has been disheartened to learn, though, that his incarceration has been very difficult on his family, as they are struggling to provide basic necessities for his son. He expects to be deported to Honduras upon finishing his sentence, and plans to stay there. *See* Whiting Decl., Ex. A. He is a new father. His son is just two and a half years old. He never again wants to put himself in a position where he could be incarcerated and cause his own son to go hungry. Although work is limited in Honduras, he expects to be able to work at a hardware store near his home, where he was able to work in the past. *Id*. In Honduras, at least he can be with his son, have legitimate work, and live in a loving home.

**DISCUSSION**

**I.      The Sentencing Guidelines (18 U.S.C. § 3553(a)(4))**

The government and Mr. Ponce-Briceno agree that the Adjusted Offense Level is 10. He has only one prior conviction,[1] from Salt Lake City in 2015, for which he received a sentence of 90 days. For this, Mr. Ponce-Briceno (barely) receives two criminal history points, which places him in Criminal History Category II. His advisory Guideline range is therefore 8 to 14 months.

Although the Court must remain mindful of the Sentencing Guidelines recommendation, the advisory Guideline range is not presumptively reasonable and it cannot be given any more or less weight than any other factor listed in section 3553(a). *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The court's paramount concern must be to "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *Carty*, 520 F.3d at 991. A sentence of five months, followed by three years of supervised release, best aligns with the goals and factors of section 3553(a) for the following reasons.

**II.     The Nature and Circumstances of the Offense and Mr. Ponce-Briceno's History Warrant a Downward Departure (18 U.S.C. § 3553(a)(1))**

As detailed in the Background section above, the circumstances surrounding the offense and the characteristics of Mr. Ponce-Briceno's difficult background counsel a downward variance from the advisory range. *See* 18 U.S.C. § 3553(a)(1). He came to this country alone while he was still a minor. He has worked hard in a number of difficult industries, but his limited education, lack of community support, and undocumented immigration status have made it incredibly difficult to secure stable employment. Despite these difficult circumstances, he has frequently managed to find gainful employment. This is why his criminal history is so limited, despite first coming to the United States in 2009. However, at the time of the offense, he had just lost his job and was having trouble making ends meet for the family he supports in Honduras.  He relates these circumstances not to minimize his

---

[1] The conviction was for distribution of a controlled substance.

DEFENDANT'S SENTENCING MEMORANDUM
*PONCE-BRICENO*

conduct, but to provide context for it. Most importantly, he has a plan to avoid these circumstances in the future, when he is deported to Honduras and can reunite with his family. While he has returned to the United States in the past, he will not do so again, as he never wants to put his young son in this position again and he is now aware of the federal consequences.

## III. A Downward Departure is Appropriate to Reflect the Severity of the Offense (18 U.S.C. § 3553(a)(2)(A))

Furthermore, a downward departure is warranted because this is a less serious offense compared with other federal crimes. *See* 18 U.S.C. § 3553(a)(2)(A). While Mr. Ponce-Briceno takes responsibility for his criminal conduct in the instant offense and recognizes that selling any amount of drugs negatively impacts public health, the scope of his offense should be viewed in relation to other federal cases. The fact is that street-level drug sales are a minor offense compared to the vast majority of federal prosecutions, including drug prosecutions. If not for the FIT initiative, this offense would not be prosecuted in federal court. To the contrary, federal drug cases normally present more serious facts, such as substantially larger quantities of controlled substances, weapons, or an organized drug trafficking operation. In comparison, the offense in Mr. Ponce-Briceno's case is relatively minor.

The Court is also well aware of the number of analogous cases sentenced in this district, and a sentence higher than five months would be disparate given the conduct at issue.

## IV. A Sentence of Five Months Affords Adequate Deterrence and Mr. Ponce-Briceno's Inevitable Deportation Minimizes Public Safety Concerns (18 U.S.C. §§ 3553(a)(2)(B) and (C))

Mr. Ponce-Briceno also respectfully contends that a below-guidelines sentence, given his difficult time in custody and inevitable deportation, provides sufficient deterrence and public protection.

The 2.5 months Mr. Ponce-Briceno has already spent at Santa Rita Jail during the pandemic have been harrowing. He has been in and out of quarantine, which means he could not attend court, counsel could not schedule meetings with him to discuss his case, he had no access to programming or recreational spaces, and he lived in constant fear of catching the virus. The longer Mr. Ponce-Briceno remains in custody, the greater the risk to his health. This is an exceptionally difficult and dangerous time to serve a sentence. Time in custody now is much harder than under normal

1   circumstances and conditions are not likely to change anytime soon. Thus, Mr. Ponce-Briceno makes

2   the request for a downward departure in consideration of the fact that five months is a much harsher

3   sanction than under normal circumstances.

4        Furthermore, Mr. Ponce-Briceno's detention and removal from the United States following his

5   release from federal imprisonment, and his plan to stay in Honduras, minimize any public safety

6   concerns. Unlike a similarly situated citizen defendant, Mr. Ponce-Briceno will not return to the local

7   community following completion of his sentence. He will be quite literally removed from the

8   community. He knows he would face steep penalties if he were to return, including supervised release

9   violations, illegal re-entry charges, and federal charges for any new offense conduct.

10                                        **CONCLUSION**

11       For the aforementioned reasons, Mr. Ponce-Briceno respectfully requests the Court sentence

12  him to five months custody and three years of supervised released.

13

14

15       Dated:   November 25, 2020                 Respectfully submitted,

16                                                  STEVEN G. KALAR
                                                    Federal Public Defender
17                                                  Northern District of California

18                                                  _____/S_____
19                                                  SOPHIA WHITING
                                                    Assistant Federal Public Defender
20

21

22

23

24

25

26

27

28

DEFENDANT'S SENTENCING MEMORANDUM
*PONCE-BRICENO*